### GERMAN v. SUBURBAN RAPID-TRANSIT CO.

(*Common Pleas of New York City and County, General Term.* April 6, 1891.)

1. INJURY TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.
    Plaintiff, a workman employed in building a station, observed an incoming train, and stepped aside to avoid it. After the engine was uncoupled he was called across the track by a fellow-workman, and directed to go under the platform to get lumber, and, while stooping for that purpose, was caught between the platform and the tender of the engine as it backed out of the station, and severely injured. He was seen by the engineer before the engine was started back. No warning was given of the engine's starting, but plaintiff knew that it would be backed down very shortly. *Held*, that plaintiff was not guilty of contributory negligence in crossing the track before the engine while not in motion.

2. SAME.
    It was culpable negligence in the engineer, after having seen plaintiff in a dangerous position, to back down upon him without looking again to see if he was out of the way.

3. OPINION EVIDENCE OF PHYSICIAN.
    A physician who attends an injured man for the first six weeks after the injury, and examines him seven months before trial of action for damages, is qualified to speak to the nature and extent of the injury.

4. EXCESSIVE DAMAGES.
    Plaintiff's injuries consisted of breakage of two ribs and laceration of the *pleura* of the left lung, incapacitating him for steady work. His earnings before injured were from $2.50 to $3.50 per day. *Held*, that a verdict for $5,500 was not excessive.

Appeal from trial term.

Action by Phillip W. German against the Suburban Rapid Transit Company to recover damages for personal injuries. There was a verdict and judgment for the plaintiff, and the defendant appeals.

Argued before DALY, C. J., and BISCHOFF, Jr., and PRYOR, JJ.

*James R. Marvin*, for appellant. *Leopold Leo*, for respondent.

DALY, C. J. This is an appeal by the defendant, the Suburban Rapid Transit Company, from a judgment in favor of the plaintiff, entered upon the verdict of the jury for the sum of $5,500, awarded for personal injuries sustained through the alleged negligence of the defendant, and from an order denying the defendant's motion for a new trial. The accident to the plaintiff occurred at the then terminus of the defendant's road at 170th street and Third avenue in the city of New York, where the defendant had a station elevated above the street, which station was then in process of erection or completion, the work upon it being performed by one Gustavesson, under a contract with the railroad company. The plaintiff was a journeyman carpenter, employed by Gustavesson in the said work, and had been engaged upon it at said place five or six weeks, with others, in the same employment. Trains were arriving and departing at this terminus at intervals of five minutes, and the work by the mechanics there was done "by fits and snatches," as "they had to wait their opportunity to jump in between trains all the time." There was but a single track, and when a locomotive brought a train to the station it left it there, and went a few feet beyond the end of the station platform; another engine came up and took the train out for the next trip; and then the first engine backed down after the outgoing train, and went down the track, and was switched off to wait for the next train, to take it out for the succeeding trip. The single track at the station was so close to the station platform that the locomotive tender and cars, when along-side the platform, were not

more than five inches from it. The injury to the plaintiff was occasioned by his being caught between the end of the platform and the tender of a locomotive, which, having in the customary manner brought a train to the station, and left it there, had gone a few feet beyond the northerly end of the station, and then started to back down to follow the outgoing train in order to be switched off and wait for another. The plaintiff, when caught, was in a stooping posture, about to crawl under a short flight of steps at the northerly end of the station platform, in order to get down upon the cross-beam which supported the station, for the purpose of assisting in raising some boards from the street up to the railway structure, to be used in the work upon which he was engaged. He had seen this locomotive coming to the station with its train, and had stepped aside to the west of the track to avoid it. He had seen it uncoupled from the cars, and move a few feet beyond the station platform, and come to a stand there. He was called by a fellow-workman, who, though not his foreman, had some direction of the work he was engaged in, and whose orders he was bound to obey. This person stood along-side of the short flight of steps above mentioned, in the very narrow space between those steps and the track. The plaintiff went across the track, and went beside him, and, when crossing, was seen by the engineer of the locomotive. When the plaintiff reached the side of the person in question, the latter ordered him to go down under the steps by which they stood to get the boards. The engineer saw them then. The plaintiff turned to obey this order, stooped to crawl under the steps, the locomotive was backed down, the tender caught the plaintiff, and crushed him against the corner of the station, which was just ahead of the flight of steps under which he was creeping. The engineer of the locomotive did not look to see if the plaintiff was still standing at this place. He could have seen, but it would have been necessary, he says, for him to put his head out at the window to do so. He gave no warning of the starting of the locomotive, and none was ever given, but the plaintiff knew it, and knew that the locomotive backed down very shortly after the departure of the train.

The jury found by their verdict that, as between the plaintiff and the company, the latter, in the operation of its locomotives and trains at that point, was the sole cause of the accident, and the evidence is sufficient to sustain its finding. There was no negligence on the part of the plaintiff which the jury were bound to find contributed to the injury. He was lawfully upon defendant's railroad structure in the performance of his duty in assisting to build a station, by defendant's authority, and under the direction of his employer. The work had to be done, as described, "by fits and starts," as the coming or going of trains permitted, and the men "had to watch their opportunity to jump in between trains all the time." It would have been negligence to have crossed in front of a moving train approaching so near as to render a collision probable, but it was not negligence to cross in front of a train which was standing still, in order to stand beside it; and it was a fair question for the jury whether, the train being at a stand-still, it was negligence for the plaintiff to stoop down and attempt to creep under the steps in such a position that if the train moved it would be certain to strike him. What conduct on the plaintiff's part was prudent, tested by the standard of ordinary care which he was bound to exercise, depended upon the circumstances. He saw that he was observed by the engineer when he was called to cross in front of the tender, and after he stood beside the steps; and he might have the right to rely upon the exercise of ordinary prudence on the part of the engineer in looking to see whether he had gotten out of the way. There was evidence to sustain the finding of negligence on the part of the engineer of the locomotive. He knew that the carpenters were working there on and about the platform all the time at that time. He had warned this plaintiff that day, or the day before. He saw him cross before the tender on

this occasion, and he saw him standing, with the other workman who called him, beside the steps; and whether it was an act of ordinary prudence to back his engine, without warning, in the direction in which he had seen the plaintiff standing, and without looking to see whether the plaintiff was so near as to be in peril, was a question for the jury. The other workman, whom the plaintiff calls the "foreman," and who remained where he and the plaintiff had been standing when the engineer saw them, was struck on the arm by the locomotive when it was backed down, and narrowly escaped injury. So that, as the plaintiff stood before the locomotive backed down, he was in a position where he was likely to be hurt if the engine was moved, and it was at least a question for the jury whether the engineer ought to have moved the locomotive without looking to see whether plaintiff had left the spot. The evidence, I think, showed want of ordinary care on his part, and the verdict of the jury ought not to be disturbed.

There is one exception which has not been disposed of by the foregoing considerations,—the admission of the evidence by the physician as to the effect of the plaintiff's injury. It is claimed to be error, on the ground that the doctor had not examined the plaintiff since about 6 weeks after the injury, and had not seen the plaintiff in 18 months before the trial. The evidence is, however, that the doctor examined him 6 or 7 months before the trial, and while he had attended him continuously for the first 6 weeks after the injury, he had since that time treated him 12 or 15 times.

It is claimed that the damages were excessive, because the plaintiff was enabled to continue his work at the end of six months after his injury, and there was not sufficient proof to show that his injury would be permanent. The plaintiff at the trial—two years after the injury—testified that the pains in his lung were as severe as they were in the beginning; that he could not lie on his back because of the pain in his lung. He is 55 years old. The injury was the breaking of two ribs and the laceration of the *pleura* of the left lung; and the reasonable certainty, according to the testimony of the physician, was that there would be permanent adhesion of the *pleura* to the lung tissue. He was unable to work for six months after the accident. His earnings had been $2.50 to $3.50 per day, and he could work every day in the week before the accident. Now he can only work a few days in the week sometimes. A verdict for $5,500 is not excessive. I do not think the injuries were exaggerated by the plaintiff, or that the jury were misled and overrated them, or awarded anything from passion or prejudice. The judgment and order appealed from should be affirmed. All concur.